```
                                              ┌─────────────────────────┐
                                              │ USDC SDNY               │
                                              │ DOCUMENT                │
                                              │ ELECTRONICALLY FILED    │
                                              │ DOC #:                  │
                                              │ DATE FILED:  7/8/19     │
                                              └─────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ORINTHIA GIFFORD,                       :

                    Plaintiff,          :     18 Civ. 6324 (PAE)(HBP)

       -against-                        :     OPINION
                                              AND ORDER
UNITED NORTHERN MORTGAGE BANKERS,       :
LTD., et al.,
                                        :
                    Defendants.
                                        :
-----------------------------------X


           PITMAN, United States Magistrate Judge:


I.   Introduction

           By notice of motion dated December 7, 2018 (Docket Item
("D.I.") 54), plaintiff moves for leave to file an amended
complaint.  For the reasons set forth below, plaintiff's motion
is denied.


II.  Background[1]

     A.   Facts

           On October 20, 1998, plaintiff executed a promissory
note in favor of defendant United Northern Mortgage Bankers, Ltd.

---

[1]The underlying facts and relevant procedural history are
also set forth in the undersigned's Report and Recommendation of
even date and is incorporated by reference herein.  However, for
the sake of clarity, I re-state the pertinent facts and
procedural history here.

("United Northern") for $251,700.00 (Complaint, dated July 12, 2018 (D.I. 1) ("Compl.") ¶ 10; Proposed Amended Complaint, dated Dec. 6, 2018, annexed to Gifford Declaration ("Gifford Decl.") as Ex. A (D.I. 55-1) ("PAC") ¶ 10).  This promissory note was secured by a mortgage given to United Northern encumbering plaintiff's real property located at 4160 Digney Avenue, Bronx, New York 10466 (the "Property") (Compl. ¶ 3; PAC ¶ 10).  Under the terms of the promissory note, plaintiff was required to make 360 installment payments of $2,025.24 to United Northern from December 1, 1998 through November 1, 2028 (PAC ¶ 10).

United Northern then assigned plaintiff's mortgage and note to defendant M&T Mortgage Corporation ("M&T") and it was recorded by the Bronx County Clerk on June 30, 1999 (PAC ¶¶ 10, 14).  In or about October 1999, plaintiff experienced financial hardship and defaulted on her loan payments to M&T (PAC ¶¶ 15-16).

On November 17, 1999, plaintiff's mortgage and note was assigned to Mortgage Electronic Registration Systems, Inc. ("MERS") which elected to accelerate plaintiff's debt based on her default (PAC ¶ 18).  MERS filed a foreclosure action against plaintiff on or about April 25, 2000 in Bronx County Supreme Court (PAC ¶ 18).  Plaintiff defaulted in that foreclosure action and on April 13, 2006, the Honorable Paul A. Victor, Justice of the Supreme Court, entered judgment against plaintiff for

$430,085.89 and ordered that the Property be sold as a single parcel at a foreclosure sale (Judgment of Foreclosure and Sale, dated Apr. 5, 2006, annexed to the Declaration of Scott W. Parker, Esq. ("Parker Decl.") as Ex. 2 (D.I. 23-3)).  Plaintiff moved to vacate this judgment on May 8, 2007; Justice Victor denied that motion on February 29, 2008 (Order, dated Feb. 29, 2008, annexed to Parker Decl. as Ex. 4 (D.I. 23-5)).

On December 12, 2007, MERS acquired title to the Property and a referee's deed was subsequently issued to it on February 23, 2009 (Referee's Deed, dated Feb. 23, 2009, annexed to Parker Decl. as Ex. 5 (D.I. 23-6)).  However, four days earlier, on February 19, 2009, MERS assigned its bid in the foreclosure to defendant Aurora Loan Services LLC ("Aurora") which instituted a holdover proceeding against plaintiff (Assignment of Bid, dated Feb. 19, 2009, annexed to Parker Decl. as Ex. 6 (D.I. 23-7)).  This holdover proceeding was resolved on May 26, 2010 when plaintiff consented to a judgment and warrant for possession of the Property in favor of Aurora (Stipulation of Settlement, dated May 26, 2010, annexed to Parker Decl. as Ex. 8 (D.I. 23-9)).

   B.   State Court
        Procedural History

Plaintiff has mounted numerous challenges in state court to the foreclosure action and the related proceedings.

Plaintiff filed an Order to Show Cause on February 13, 2012 seeking to stay all eviction proceedings against her and to vacate the judgment of the foreclosure action claiming that MERS "had no standing to bring [the] action against [her] because [her] mortgage may not have been properly assigned to them" (Affirmation in Support, dated Feb. 13, 2012, annexed to Parker Decl. as Ex. 9 (D.I. 23-10)).   This motion was denied by the Honorable Stanley Green, Justice of the Supreme Court, on May 15, 2012 who found that plaintiff "never raised the issue of [MERS'] standing previously and thus [had] waived any objection thereto" (Order, dated May 15, 2012, annexed to Parker Decl. as Ex. 10 (D.I. 23-11)).

Plaintiff filed a nearly identical motion in October 2012 which was again denied by Justice Green for substantially the same reasons:

> The motion by defendant to vacate the judgment of the foreclosure and sale, etc is denied.   This case is thirteen years old.   Defendant has resided in and conducted a business in the premises without paying mortgage payments or rent all these years.   This case has been litigated for many years, with many motions, and multiple eviction proceedings have been brought in the Civil Court.   Defendant has successfully remained in the premises for free.   The issue of standing of MERS was resolved long ago.   The judgment in this case was issued prior to any determination in other cases that MERS lacked standing to bring foreclosure actions. Defendant did not timely raise this issue and this Court has already ruled, by order dated May 15, 2012, that defendant had waived the issue.

(Order, dated Apr. 17, 2013, annexed to Parker Decl. as Ex. 11
(D.I. 23-12)).  Plaintiff appealed this decision to the First
Department, which affirmed Justice Green's ruling and found that
"Gifford . . . did not demonstrate entitlement to vacatur . . .
since she did not demonstrate a reasonable excuse for her default
or move within one year[,] [n]or did she demonstrate grounds for
vacatur based on fraud or misrepresentation."  Mortgage Elec.
Registration Sys., Inc. v. Gifford, 133 A.D.3d 429, 431, 20
N.Y.S.3d 9, 11 (1st Dep't 2015).

    C.  The Present Action

        Plaintiff commenced this action pro se against defen-
dants United Northern, Aurora, MERS, M&T, Nationstar Mortgage LLC
("Nationstar") and Knuckles, Komosinski & Elliot ("KKE") on July
13, 2018 alleging violations of 42 U.S.C §§ 1983 and 1985 because
defendants unlawfully deprived her of her constitutional right to
her property, "refusal or neglect to prevent the deprivation" of
her property rights, "abuse of process" with respect to the
foreclosure action, obstruction of justice and denial of due
process, conspiracy, fraud and fraud on the court (Compl. ¶¶ 52-
79).

        Specifically, plaintiff alleged that United Northern
unconscionably separated her mortgage from the promissory note by
assigning the mortgage and that "trading her [n]ote as an invest-

ment security in a [t]rust on Wall Street" unlawfully "materially altered" the agreement (Compl. ¶¶ 11-12). Plaintiff appeared to argue that because of this alleged separation, the mortgage was unenforceable and, thus, defendants had no right to collect on, foreclose on or evict her from the Property (Compl. ¶¶ 11-21). Plaintiff also argued that United Northern and MERS "did not have [s]tanding to invoke the Bronx County Supreme Court's jurisdiction" (Compl. ¶¶ 27-29). Finally, plaintiff alleged that because she was not aware that her mortgage was being assigned or securitized and because defendants did not have standing to bring the foreclosure action, defendants' actions amounted to fraud (Compl. ¶¶ 28, 30-41).

Defendants moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim (Memorandum of Law in Support of Defendant's Motion to Dismiss, dated Aug. 24, 2018 (D.I. 23-1) ("M&T Memo."); Memorandum of Law, dated Sept. 5, 2018 (D.I. 27) ("United Memo."); Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint with Prejudice, dated Sept. 17, 2018 (D.I. 44) ("MERS Memo.")[2]; Declaration of John E. Brigandi, Esq., dated Nov. 7, 2018 (D.I. 59) ("Bigandi Decl."))[3]. For the reasons set forth in

---

[2]Defendants MERS, Aurora and Nationstar are represented by the same counsel and, thus, submitted a joint motion to dismiss.

[3]KKE submitted only an attorney declaration as its motion to (continued...)

6

my Report and Recommendation, I respectfully recommended that
defendants' motions to dismiss be granted.

Plaintiff did not submit any opposition papers to
defendants' motions to dismiss; rather, she moved for leave to
file an amended complaint.

D.  The Proposed Amended Complaint

In her proposed amended complaint, plaintiff omits
defendants MERS and KKE from the action (Gifford Decl. ¶ 8; PAC).
Plaintiff also appears to have abandoned her claims alleging
violations of Section 1983 and 1985, a refusal or neglect to
prevent deprivation of her rights, abuse of process, obstruction
of justice and denial of due process claims and, instead, asserts
16 new claims (PAC ¶¶ 39-118).

Plaintiff's proposed amended complaint sets out addi-
tional details with respect to the time line of her mortgage loan
and the underlying foreclosure action, especially with respect to
defendants M&T, Aurora and Nationstar.  While plaintiff's initial
complaint did not contain any specific factual assertions with
respect to M&T, Aurora or Nationstar, her proposed amended
complaint explains that United Northern assigned her mortgage to
M&T prior to the foreclosure action filed by MERS, that the

---

[3](...continued)
dismiss.  This practice violates Local Civil Rule 7.1(a)(2).

referee's deed to the Property was eventually assigned by MERS to Aurora and that Aurora prosecuted the holdover proceeding against plaintiff, and that on December 8, 2017, Aurora assigned the Property to Nationstar by a "quitclaim deed" (PAC ¶¶ 14-19, 23, 31).

Plaintiff's proposed amended complaint is predicated on the same facts as her initial complaint; however, plaintiff now appears to be arguing that United Northern, M&T and Aurora were really the parties who prosecuted the foreclosure and holdover proceedings against her and that they falsely represented that MERS was the owner of the mortgage (PAC ¶ 5, 18, 23). This assertion flows from plaintiff's allegation (1) that "the purported transfer of the 'mortgage loan' in dispute from . . . M&T to . . . MERS . . . was not recorded and remains unrecorded to present date", (2) that the "assignment of mortgage" document-ing M&T's assignment of plaintiff's mortgage to MERS was "forged" and "concealed from" the state court in the foreclosure action and (3) a finding in an unrelated Nebraska state court case that "MERS is contractually prohibited from taking any action on 'mortgage loans'" (PAC ¶¶ 18, 23).

Plaintiff further alleges that the purportedly original promissory note that either M&T or Aurora presented the state court was actually a forgery because:

8

"(i) someone authored and or forged [p]laintiff's
signature upon the instrument misrepresented by Defen-
dants(s) M&T and or Aurora to be a true copy of the
note in dispute; (ii) the two undated stamps presented
to be indorsements [sic] are not original signatures;
(iii) the purported signatures of the officers of UNMB
and M&T affixed upon the aforementioned undated stamps
were authored and or forged by someone other than the
persons named; and (iv) the instrument presented to be
a true and correct copy of the original note in dispute
is nothing more than a counterfeit and or scanned image
of the original note, the latter of which was deliber-
ately destroyed[] by Defendant M&T and or Aurora upon
their illegal creation of the back dated electronic
note registered in the MERS[] eRegistry" (PAC ¶ 25).

III.  <u>Analysis</u>

   A.  <u>Applicable Legal Principles</u>

        The standards applicable to a motion to amend a plead-

ing are well settled and require only brief review.  Leave to

amend a pleading should be freely granted when justice so re-

quires.  Fed.R.Civ.P. 15(a); <u>Foman v. Davis</u>, 371 U.S. 178, 182

(1962); <u>Medina v. Tremor Video, Inc.</u>, 640 F. App'x 45, 47 (2d

Cir. 2016) (summary order); <u>Loreley Fin. (Jersey) No. 3 Ltd. v.</u>

<u>Wells Fargo Sec., LLC</u>, 797 F.3d 160, 190 (2d Cir. 2015); <u>Dluhos</u>

<u>v. Floating & Abandoned Vessel, Known as "New York"</u>, 162 F.3d 63,

69 (2d Cir. 1998); <u>Gumer v. Shearson, Hammill & Co.</u>, 516 F.2d

283, 287 (2d Cir. 1974).  This "permissive standard . . . is

consistent with [the] strong preference for resolving disputes on

the merits."  <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo</u>

9

Sec., LLC, supra, 797 F.3d at 190 (internal quotation marks omitted).

However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (per curiam), citing Foman v. Davis, supra, 371 U.S. at 182; accord American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.); see also Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir. 1997) (summary order), citing Foman v. Davis, supra, 371 U.S. at 182.

B.   Rooker-Feldman Doctrine[4]

Under the Rooker-Feldman doctrine, federal district courts generally lack subject matter jurisdiction over cases that are, in essence, appeals from or collateral attacks on state court judgments.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005); Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co., 664 F. App'x 20, 21 (2d Cir. 2016) (summary order); Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014); Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010).  The doctrine is rooted in the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., supra, 544 U.S. at 283.  "There are four requirements for the application of the Rooker-Feldman doctrine:  (1) the federal-court plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by

---

[4]I note that with the exception of M&T, defendants only submitted letter responses to plaintiff's motion to amend in which they argued that plaintiff's motion was "untimely", but failed to present any other substantive arguments.  However, because the Rooker-Feldman doctrine is jurisdictional, I can consider its impact on the proposed amended complaint mea sponte. See Koziel v. City Court of Yonkers, 351 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming sua sponte dismissal of complaint on initial review for lack of subject matter based on the Rooker-Feldman doctrine); Talley v. LoanCare Serv., Div. of FNF, 15-CV-5017 (JMA)(AKT), 2018 WL 4185705 at *5 (E.D.N.Y. Aug. 31, 2018) (action challenging state court mortgage foreclosure judgment dismissed on initial review pursuant to the Rooker-Feldman doctrine).

a state court judgment; (3) the plaintiff invite[s] . . . review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." Vossbrinck v. Accredited Home Lenders, Inc., supra, 773 F.3d at 426 (quotation marks and citation omitted); accord McKithen v. Brown, 626 F.3d 143, 154 (2d Cir. 2010); Hoblock v. Albany Cnty. Bd. of Elecs., 422 F.3d 77, 85 (2d Cir. 2005). "Where all four requirements are met, a district court must dismiss for lack of subject matter jurisdiction." Hylton v. J.P. Morgan Chase Bank, N.A., supra, 338 F. Supp. 3d at 274.[5]

Thus, in order for plaintiff to succeed on her motion to amend her complaint, the allegations and claims in her pro-posed amended complaint must cure the Rooker-Feldman deficiencies that I concluded barred her initial complaint.  See Smith v. 131 E. Ames Inc., 14-CV-5060 (SJF)(SIL), 2015 WL 1565491 at *9 (E.D.N.Y. Apr. 8, 2015) (adopting Report & Recommendation) (leave to amend the complaint denied where plaintiff's proposed amended complaint failed to "cure[] the infirmities of the original Complaint . . . by defeating application of the Rooker-Feldman doctrine").

Construed liberally, plaintiff argues in her proposed amended complaint that her claims are not barred by the Rooker-

_____

[5]As explained in my Report & Recommendation of even date, all of the claims in plaintiff's original complaint are barred by the Rooker-Feldman doctrine.

12

Feldman doctrine because United Northern, M&T, Aurora and Nationstar were not named plaintiffs in the state foreclosure action (PAC ¶ 37).  However, taken as a whole, plaintiff's proposed amended complaint again claims a pattern of fraudulent activity involving the initial loan agreement with United Northern, the allegedly unlawful assignment to M&T, the purportedly false assignment to MERS, the allegedly fraudulent judgment in the foreclosure proceeding, the allegedly unlawful holdover and eviction action prosecuted by Aurora and the transfer of the Property to Nationstar -- all of which is "inextricably intertwined" with the state court foreclosure action.  Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), aff'd, 446 F. App'x 360 (2d Cir. 2011) (summary order).  Thus, the Rooker-Feldman doctrine may be applied to plaintiff's claims against United Northern, M&T, Aurora and Nationstar.  Swiatkowski v. Citibank, supra, 745 F. Supp. 2d at 165; accord Pharr v. Evergreen Garden, Inc., 123 F. App'x 420, 422-23 (2d Cir. 2005) (Rooker-Feldman doctrine bars "claims that are 'inextricably intertwined' with a state court decision"); In re Lunn, 16-20163 (PRW), 2016 WL 5349726 at *7 (W.D.N.Y. Sept. 23, 2016) (Rooker-Feldman doctrine barred plaintiff's claims that were predicated on "irregularities in recording the various assignments of [her] mortgage" which allegedly showed that "her mortgage loan lack[ed] a valid chain of mortgage and note ownership from the original

13

lender to date" because such claims were caused by or arose out of a state court foreclosure judgment); Anctil v. Ally Fin., Inc., 998 F. Supp. 2d 127, 132-34 (S.D.N.Y. 2014) (Seibel, D.J.), aff'd in part, rev'd in part on other grounds sub nom., 588 F. App'x 66 (2d Cir. 2015) (holding that the Rooker-Feldman doctrine barred plaintiff's claims, which, asserted that transfers of mortgages were illegal, chains of title to mortgages were broken, the foreclosing entities initiated the foreclosure proceedings using false and misleading documents and did not hold the mort- gages, thus rendering the foreclosures invalid, even where "[d]efendants' allegedly fraudulent conduct may have preceded the entry of the foreclosure judgments, but the injury complained of -- loss of [p]laintiffs' homes -- was effected by the judgments, not by any previous direct actions taken by [d]efendants" (empha- sis in original)); Done v. Option One Mortg., 09-CV-4770 (JFB), 2011 WL 1260820 at *6 (E.D.N.Y. Mar. 30, 2011) (Rooker-Feldman doctrine barred plaintiff's claims that were "entirely dependent on the loan in question being invalid, which ha[d] already been resolved against plaintiff in the state court [foreclosure] proceeding"); see also Omotosho v. Freeman Inv. & Loan, 136 F. Supp. 3d 235, 246-47 (D. Conn. 2016) ("Rooker-Feldman requires the federal court plaintiff to have been a party to the state court proceeding, but it does not require the federal court defendants to have been party to the state court proceedings.").

14

Here, the first and fourth "procedural" requirements of the Rooker-Feldman doctrine are clearly met as to all of plaintiff's proposed claims.  Plaintiff lost in the foreclosure action in Bronx County Supreme Court and her loss took place over 12 years before she filed her complaint in federal court on July 13, 2018.

With respect to second and third "substantive" requirements of the Rooker-Feldman doctrine, an individual analysis of each of plaintiff's proposed claims is required to determine whether plaintiff alleges injuries caused by the state court judgment and whether adjudication of plaintiff's claims would invite a review and rejection of that judgment.

### 1.   Plaintiff's New Claims that Are Barred by Rooker-Feldman

#### a.   Count 1 - Racketeer Influenced and Corrupt Organizations Act Claim

Plaintiff alleges that defendants M&T, Aurora and Nationstar violated "the Federal Civil [Racketeer Influenced and Corrupt Organizations Act] statutes by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise or enterprises, through a pattern of racketeering activity" (PAC ¶ 42).  Plaintiff bases this claim on her allegation that M&T, Aurora and Nationstar "received income derived . . . from a pattern of racketeering activity or through collection

15

of an unlawful debt" (PAC ¶ 44).  Plaintiff further alleges that
defendants' conduct caused her to suffer "actual damages of
emotional distress, loss of monies paid by the [p]laintiff
towards a fraud in factum 'mortgage transaction', and other costs
associated to defend the [p]laintiff's property" (PAC ¶ 59).

Plaintiff's Racketeer Influenced and Corrupt
Organizations Act ("RICO") claim is barred by the Rooker-Feldman
doctrine.  In order to rule on this claim, the Court would have
to determine whether defendants collected an "unlawful debt" and,
thus, would require an assessment of whether plaintiff's mortgage
was invalid and unenforceable -- an issue that has clearly been
decided numerous times in state court.  This is precisely the
type of collateral attack the Rooker-Feldman doctrine prohibits.
See Francis v. Nichols, 16 Civ. 1848 (CS), 2017 WL 1064719 at *4
(S.D.N.Y. Mar. 21, 2017) (Seibel, D.J.) (plaintiff's civil RICO
claim barred by Rooker-Feldman because "plaintiff could not
prevail on his claims in [district] [c]ourt without a finding
that the state court judgment was wrong"); see also Murphy v. GE
Capital Asset Corp., 38 F. App'x 86, 86-87 (2d Cir. 2002) (af-
firming district court's finding that plaintiff's suit brought
under RICO was barred by the Rooker-Feldman doctrine where
plaintiff "alleged that defendants had fraudulently foreclosed on
his property by presenting fraudulent mortgage documents to the
state courts"); Boothe v. Rossrock Funds II LP, 16 Civ. 900

(PKC), 2017 WL 2271360 at *6 (E.D.N.Y. May 23, 2017) (plaintiff's RICO claim barred by the Rooker-Feldman doctrine where the claim was predicated on the allegedly "fraudulent transfer of [her] property" and defendants' "gross judicial misconduct" in the underlying foreclosure proceeding").

Furthermore, "[p]laintiff is [also] inviting this Court to sit in review of the state court judgment . . . [because] [her] damages claims are intertwined with questions of whether [d]efendant[s] owned the [n]ote or the [m]ortgage and are barred by Rooker-Feldman." Francis v. Nichols, supra, 2017 WL 1064719 at *6 (quotation marks and citation omitted). Although plaintiff claims her damages are for "emotional distress" and expenses incurred in defending the foreclosure action, such injuries, assuming they exist, were "directly caused by the adverse judgment in the [f]oreclosure [a]ction" and, thus, are barred by the Rooker-Feldman doctrine. Francis v. Nichols, supra, 2017 WL 1064719 at *4 (civil RICO claim barred where plaintiff's alleged injuries were "expenses in defending the foreclosure action" and "emotional distress"); accord Charles v. Levitt, 716 F. App'x 18, 21 (2d Cir. 2017) (plaintiff's "civil RICO and fraud claims . . . do not escape the ambit of the Rooker-Feldman doctrine [because] the injury of which [plaintiff] complains . . . and which he seeks to have remedied, is the state court [] judgment" and "would require the federal court to review and reject the state

court judgment" (internal quotation marks and citation omitted));
Swiatkowski v. Citibank, supra, 745 F. Supp. 2d at 165 ("Although
plaintiff has labeled the relief in the complaint as seeking
monetary damages, it is abundantly clear that the whole purpose
of this action is to . . . undo the foreclosure judgment.").

Thus, I find that plaintiff's proposed RICO claim is
barred under the Rooker-Feldman doctrine because the alleged
injuries were caused by an underlying state court judgment and
adjudication of plaintiff's claims would require review of that
judgment.

### b. Count 3 - Fair Debt Collection Practices Act Claim

Plaintiff next seeks to bring a claim against Aurora
and Nationstar pursuant to the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. §§ 1692, et seq. for collecting on a mort-
gage loan that was fraudulently obtained (PAC ¶ 65). Specifi-
cally, plaintiff alleges that neither Aurora nor Nationstar "have
evidence of being a creditor for the 'mortgage loan'", and that
they "made false representations of the character, amount, and
legal status of the debt in dispute", misrepresented to plaintiff
that "nonpayment of the debt in dispute [would] result in the
sale of the subject property" and used deceptive means to collect
the debt by "willfully misrepresenting [United Northern] as the
actual lender" of the mortgage and note (PAC ¶ 65).

18

Plaintiff's allegations are extremely confusing, given that the state court ordered that the Property be sold prior to Aurora's and Nationstar's involvement in this matter, plaintiff's explicit consent to a judgment and warrant for possession of the Property in favor of Aurora and plaintiff's allegations that defendants "misrepresented" MERS as the actual lender, not United Northern. However, construed liberally and examining the proposed amended complaint as a whole, it appears that plaintiff is once again alleging that her note and mortgage were unlawfully assigned and, thus, the state court foreclosure judgment was fraudulently obtained and that Aurora and Nationstar, therefore, had no right to collect on her note or to take possession of the Property.

Awarding relief on this claim would again require a "review and reject[ion] the [state court] judgment of foreclosure on the grounds that the [mortgage] assignments were invalid and that [defendants] had no right to the property at issue" and would require the Court to improperly question "the validity of the state court judgment of foreclosure." Graham v. Select Portfolio Serv., Inc., 156 F. Supp. 3d 491, 503-04 (S.D.N.Y. 2016) (Koeltl, D.J.). Several courts in this Circuit have held that FDCPA claims based on similar allegations are barred by the Rooker-Feldman doctrine. See Desir v. Florida Capital Bank, N.A., 18-CV-2630 (ENV)(PK), 2019 WL 1895061 at *3 (E.D.N.Y. Apr.

19

15, 2019) (FDCPA claim against defendants who claimed "an entitlement" post-foreclosure to plaintiff's property barred by Rooker-Feldman where plaintiff alleged that these "third party debt collectors" based their entitlement claims on a fraudulently obtained foreclosure judgment); Hines v. HSBC Bank USA, 15-CV-3082 (CBA)(MDG), 2016 WL 5716749 at *4-*5 (E.D.N.Y. Sept. 30, 2016) (plaintiff's FDCPA claim barred by Rooker-Feldman where plaintiff "contest[ed] the authenticity of the underlying debt instruments and [defendant's] status as a creditor" because the district court "would necessarily have to review the state court judgment to adjudicate [those] claims"); Gordon v. Ocwen Loan Serv., 15-cv-507 (RNC), 2016 WL 1305108 at *1 (D. Conn. Mar. 31, 2016) ("[A]lthough plaintiff's complaint references several federal statutes, including . . . the FDCPA . . ., [c]onstruing the language of the complaint in its broadest terms, it is evident that plaintiff complains of injuries caused by the foreclosure judgment and that the purpose of this action is to undo the foreclosure."); Barbato v. U.S. Bank Nat'l Ass'n, 14 Civ. 2233 (NSR), 2016 WL 158588 at *3-4 (S.D.N.Y. Jan. 12, 2016) (Roman, D.J.) (plaintiff's FDCPA and fraud claims barred by Rooker-Feldman where "[i]n simplest terms, [p]laintiff[] appear[ed] to argu[e] that [d]efendant lacked standing to fore-close or procured the foreclosure through fraudulent means"); Graham v. Select Portfolio Serv., Inc., supra, 156 F. Supp. 3d at

20

503-04 (FDCPA claim barred by Rooker-Feldman doctrine where plaintiff alleged that "his property was not acquired by [defendants] pursuant to the [lawful] assignment of [his] mortgage" and that defendants continued to violate "[f]ederal debt collection laws . . . [by] engaging in a debt collection scheme when they reasonably knew or should have known that the debt claims [were] fake, fabricated and illegitimate" (internal quotation marks and citations omitted)); Craig v. Saxon Mortg. Serv., Inc., 13-CV-4526 (SJF)(GRB), 2015 WL 171234 at *8 (E.D.N.Y. Jan. 13, 2015) (plaintiff's FDCPA claim barred by Rooker-Feldman doctrine where plaintiff alleged that defendants attempted to collect a debt they had "no authority to collect" and never had "lawful authority [or] possession of [plaintiff's] [n]ote"); Quiroz v. U.S. Bank Nat'l Ass'n, 10-civ-2485, 2011 WL 3471497 at *4 (E.D.N.Y. Aug. 5, 2011) ("[A]ny FDCPA claim based on the falsity of the debt is barred by Rooker-Feldman because it would be inextricably intertwined with [the state court's order of foreclosure and sale].").[6]

_____

[6]While some courts have held that FDCPA claims that involve allegations of misconduct committed in the course of "attempting to collect a debt owed under [a] state court judgment" are not barred by Rooker-Feldman because a plaintiff may not have had "an opportunity to litigate them in the foreclosure action", see Hines v. HSBC Bank USA, supra, 2016 WL 5716749 at *5, plaintiff's FDCPA claim is distinguishable. First, plaintiff's entire FDCPA claim is predicated on the fact that Aurora and Nationstar collected on a debt that was the result of a fraudulently obtained foreclosure judgment, and not any type of independent
(continued...)

Plaintiff alleges the same injuries of emotional distress, making expenditures towards a fraudulent debt and "other costs to defend [her] property and reputation" in connection with her FDCPA claim (PAC ¶ 66). As with plaintiff's RICO claim, although she pleads monetary damages which some courts allow under Rooker-Feldman, her alleged injuries are, again, clearly caused by underlying foreclosure action and she "invit[es] this Court to sit in review of the state court judgment . . . [because] [plaintiff's] damages claims are intertwined with questions of whether [d]efendant[s] owned the [n]ote or the [m]ortgage and are barred by Rooker-Feldman." Francis v. Nichols, supra, 2017 WL 1064719 at *6 (quotation marks and citation omitted) (plaintiff's claimed damages for "emotional distress" and expenses in defending the foreclosure action were "directly caused by the adverse judgment in the [f]oreclosure [a]ction" and, thus, are barred by Rooker-Feldman); accord Swiatkowski v. Citibank, supra, 745 F. Supp. 2d at 165 ("Although plaintiff has labeled the relief in the complaint as seeking monetary damages, it is abundantly clear that the whole purpose of this action is to . . . undo the foreclosure judgment.").

_____

[6](...continued)
collection misconduct on the part of Aurora or Nationstar. Second, plaintiff had an opportunity to litigate these allegations in the subsequent holdover proceeding that was prosecuted by Aurora more than four years after the foreclosure judgment was rendered.

Thus, plaintiff's proposed FDCPA claim also satisfies the requirements of and is barred by the <u>Rooker-Feldman</u> doctrine.

### c. Counts 4, 7, 8, 9 and 11 - Fraud Claims

Plaintiff alleges multiple counts of fraud against defendants, including "continual acts of fraud", "fraudulent concealment", "constructive fraud", "civil aiding and abetting fraud" and "civil conspiracy to defraud" (PAC ¶¶ 67-71, 79-80, 83-86, 90-93). All of plaintiff's fraud claims are predicated on the assertion that "defendants suppressed or concealed material facts with the intention that the [p]laintiff be misled as to the character, legality, ownership, and possession of the 'mortgage transaction' in dispute" by "employing false evidence" and presenting "forged" documents "to give the impression of trans-fers of the 'mortgage loan' in dispute" (PAC ¶¶ 80, 82, 84-85, 91-92).

Apparently realizing that she is barred from re-asserting her claim that MERS did not have proper standing to initiate the foreclosure proceeding against her, plaintiff has omitted MERS as a defendant and now attempts to argue that United Northern, M&T, Aurora and Nationstar all conspired to conceal fraudulently that MERS never owned plaintiff's note and mortgage by presenting the state court with forged documents during the foreclosure and holdover proceedings. This essentially amounts

23

to another attempt by plaintiff to argue that the plaintiffs in the foreclosure and holdover proceedings lacked standing because of alleged invalid assignments of her mortgage -- an argument clearly barred by Rooker-Feldman. Pennicott v. JPMorgan Chase Bank. N.A., 16 Civ. 3044 (VB), 2018 WL 1891312 at *3 (S.D.N.Y. Apr. 18, 2018) (Brinccetti, D.J.) ("Rooker-Feldman bars claims that ask a court to find a defendant lacked standing to pursue foreclosure in a prior state court action, because such claims require a court to sit in review of the state court judgment."); accord Hylton v. J.P. Morgan Chase Bank, N.A., supra, 338 F. Supp. 3d at 275; Rockwood v. Cenlar FSB, 17 Civ. 10153 (VB), 2018 WL 2122820 at *3 (S.D.N.Y. May 8, 2018) (Briccetti, D.J.); Francis v. Nichols, supra, 2017 WL 1064719 at *4; Gurdon v. Bank, supra, 2016 WL 721019 at *7.

Moreover, plaintiff's allegation that defendants engaged in fraudulent conduct by presenting the state court with allegedly "void" and "forged" documents does not save her pro-posed fraud claims because "[i]f the court were to accept the plaintiff's claim that the loan documents were forged, the court's ruling would necessitate a finding that the [j]udgment of [f]oreclosure and [s]ale was erroneously entered, and thus, void [which] . . . is precisely the result that the Rooker-Feldman doctrine seeks to avoid." Ashworth v. Boggio, CV-15-948 (JFB)(ARL), 2016 WL 4398956 at *5 (E.D.N.Y. July 26, 2016)

24

(Report & Recommendation), adopted at, 2016 WL 4399311 (E.D.N.Y.
Aug. 15, 2016) (quotation marks and citation omitted); accord
Ward v. Bankers Tr. Co. of California, N.A., 09-CV-1943
(RRM)(LB), 2011 WL 1322205 at *6-*7 (E.D.N.Y. Mar. 29, 2011)
(plaintiff's fraud claims based on allegations of "forged docu-
ments" being presented and relied upon in the underlying state
foreclosure and holdover actions barred by Rooker-Feldman doc-
trine because a ruling in her favor "would effectively declare
the state court judgments of foreclosure and eviction fraudu-
lently procured and thus void" (quotation marks and citation
omitted)); Swiatkowski v. Citibank, supra, 745 F. Supp. 2d at 166
(plaintiff's claims that a state court foreclosure judgment was
obtained using fraudulent documents barred by Rooker-Feldman).

In connection with her fraud claims, plaintiff once
again alleges the same injuries of emotional distress, having
paid money towards a fraudulent mortgage transaction and "other
costs to defend [her] property and reputation" (PAC ¶¶ 80, 82,
86, 93). As discussed above, such alleged injuries were caused
by the underlying foreclosure and holdover proceedings. While
some courts have held that a fraud claim alleging misconduct
during a foreclosure proceeding in which a plaintiff seeks
monetary damages, rather than declaratory or injunctive relief,
can survive Rooker-Feldman, the Second Circuit has made it clear
that such an exception only applies to fraud claims the adjudica-

tion of which "does not require the federal court to sit in review of the state court judgment." Vossbrinck v. Accredited Home Lenders, Inc., supra, 773 F.3d at 427; accord Charles v. Levitt, supra, 716 F. App'x at 21 (noting the distinction "between [fraud] claims that require a federal court to review a state court judgment and those that seek damages from [d]efendants for injuries [] suffered from an alleged fraud" involving a state court judgment (emphasis in the original)).

The court cannot find that defendants initiated a fraudulent foreclosure proceeding against her and had no right to the relief they obtained without finding that both the Bronx Supreme Court's judgment of foreclosure and sale and the First Department's affirmance were erroneous.  Plaintiff is not permitted to sidestep Rooker-Feldman by "spruc[ing] up [her] amended complaint with general allegations of fraud" where it is clear that "the damages [plaintiff] seeks are aimed at compensating [her] for the . . . loss of [her] [p]roperty." Charles v. Levitt, supra, 716 F. App'x at 22; accord Francis v. Nichols, supra, 2017 WL 1064719 at *5 ("Although the [complaint] speaks in terms of fraud and deception, Plaintiff has alleged only injuries either directly caused by the adverse judgment in the Foreclosure Action, or injuries the remedy for which would require this Court to revisit and reject the state court's determination that [defendant] had standing to pursue the foreclosure.")

26

Thus, plaintiffs proposed fraud claims under Counts 4, 7, 8, 9 and 11 are barred by the Rooker-Feldman doctrine

### d.   Count 5 - Unjust Enrichment

Plaintiff next asserts a claim of unjust enrichment, alleging that defendants "have taken title to [p]laintiff's house through an unlawful foreclosure debt collection act and a referee sale" and "eject[ed] [p]laintiff from her house by way of unlaw-ful means and methods" (PAC ¶¶ 75-76).  For substantially the same reasons discussed above, plaintiff's proposed unjust enrichment claim is also barred by the Rooker-Feldman doctrine as it clearly "impermissibly seeks review and rejection of a state court judgment" -- namely, the foreclosure and holdover proceed-ings.  Charles v. Levitt, supra, 716 F. App'x at 21; see also Davis v. JP Morgan Chase Bank, 14 Civ. 6263 (KMK), 2016 WL 1267800 at *11 (S.D.N.Y. Mar. 30, 2016) (Karas, D.J.) (plain-tiff's allegation that defendants "were unjustly enriched as a result of the foreclosure judgment" barred by Rooker-Feldman doctrine); Barbato v. U.S. Bank Nat'l Ass'n, supra, 2016 WL 158588 at *4 (plaintiff's unjust enrichment claimed barred by Rooker-Feldman because "the crux of [his] action [was] derived from [a state foreclosure] decision" and "the allegations under-lying [the claim were] intertwined with questions of whether [d]efendant own[ed] the [n]ote or the [m]ortgage"); Campbell v.

Bank of New York Mellon Tr. Co., N.A., 11 Civ. 1588 (CS)(PED), 2012 WL 2952852 at *14 (S.D.N.Y. May 8, 2012) (Davison, M.J.) (Report & Recommendation), adopted at, 2012 WL 2953967 (S.D.N.Y. July 18, 2012) (Seibel, D.J.) (defendants' alleged "unjust enrichment" was "caused by the state court foreclosure judgment and therefore, pursuant to the Rooker-Feldman doctrine, does not present a claim that the Court may review").

It is clear from plaintiff's claim that her alleged injury is the loss of the Property in the foreclosure and hold-over proceedings and, thus, was caused by the underlying state court judgments. Accordingly, plaintiff's unjust enrichment claim meets all four requirements of the Rooker-Feldman doctrine and is barred.

e. Count 15 - Quiet Title

Plaintiff next seeks to assert a claim to quiet title against Nationstar, alleging that it is not "legally entitled" to the Property based on an "illegal referee sale" and "purported quitclaim deed" that was eventually issued to Nationstar (PAC ¶ 111). Plaintiff further requests that Nationstar be "estopped and precluded from asserting any claim against [p]laintiff's estate" (PAC ¶ 114). Essentially, plaintiff is requesting that this court find that the Bronx County Supreme Court's judgment and order of sale of the Property was erroneous, that this error

necessarily voids the subsequent quitclaim deed to the Property
in favor of Nationstar and that plaintiff's rights to the Prop-
erty are superior to those of Nationstar.

It is well settled that such quiet title claims are
barred under Rooker-Feldman.  Worthy-Pugh v. Deutsche Bank Nat'l
Tr. Co., supra, 664 F. App'x at 21 (plaintiff's quiet title claim
properly dismissed because it "challenge[d] [the state court
foreclosure] judgment and effectively request[ed] that the
federal district court rule that the judgment was void"); Riley
v. Comm'r of Fin. of City of New York, 618 F. App'x 16, 17 (2d
Cir. 2015) (plaintiff's quiet title claim properly dismissed
pursuant to Rooker-Feldman because plaintiff's "claimed ownership
of the property . . . was already fully adjudicated and rejected
in the prior state-court proceedings"); Wilson v. HSBC Bank, USA,
16 Civ. 8405 (NSR), 2018 WL 1449204 at *6 (S.D.N.Y. Mar. 22,
2018) (Román, D.J.) (plaintiff's quiet title claim which asked
"the Court to determine ownership of the note, mortgage, and real
property interest" and to "enjoin[] [defendants] from asserting
any estate, right[,] title or interest in the Subject Property"
barred by Rooker-Feldman) (internal quotation marks omitted);
Nath v. JP Morgan Chase Bank, 15 Civ. 3937 (KMK), 2016 WL 5791193
at *7 (S.D.N.Y. Sept. 30, 2016) (Karas, D.J.) (quiet title claim
barred by Rooker-Feldman where plaintiff sought "a determination
that . . . [d]efendants in this lawsuit have no right or claim to

[t]itle or [l]ien on or against the Property"); Gurdon v. Bank, supra, 2016 WL 721019 at *7 (plaintiff's quiet title claim "squarely conflicts with Rooker-Feldman as it expressly seeks to have the Court reverse the state-court judgment, which resulted in [plaintiff] being divested of his property interest").

Thus, plaintiff's quiet title claim against Nationstar is also barred by the Rooker-Feldman doctrine.

### f.   Count 16 - Declaratory Relief

Finally, plaintiff's claim for "declaratory relief" under Count 16 is also barred by the Rooker-Feldman doctrine because she specifically seeks to have her note and mortgage be declared "void[]" (PAC ¶ 118). Again, plaintiff is requesting relief that would require this Court to assess the validity of state court proceedings, which is precisely what the Rooker-Feldman doctrine prohibits. See Redmond v. Bank of New York Mellon Corp., 697 F. App'x 23, 24 (2d Cir. 2017) (summary order) (plaintiff's "declaratory relief" claim which sought a declaration that "all attempts to foreclose by [d]efendants against the subject property are void" properly dismissed pursuant to Rooker-Feldman doctrine); Vossbrinck v. Accredited Home Lenders, Inc., supra, 773 F.3d at 427 (plaintiff's "declaratory relief" claim that requested that "the state [foreclosure] judgment [be] declared 'void'" properly dismissed pursuant to Rooker-Feldman

doctrine); Omotosho v. Freeman Inv. & Loan, supra, 136 F. Supp.
3d at 247 (finding that the plaintiff's allegation that "the
state court judgment is void, and should be vacated or set aside,
. . . is precisely the type of case the Rooker-Feldman doctrine
bars").

### g.   Summary

Accordingly, Counts 1, 3, 4, 5, 7, 8, 9, 11, 15 and 16
are barred pursuant to the Rooker-Feldman doctrine and plain-
tiff's motion to amend with respect to those claims is denied.

### 2.   Plaintiff's Remaining Claims

### a.   Counts 6 and 14 -
Claims Against OLS and WFB

Plaintiff inexplicitly alleges a "negligent misrepre-
sentation" claim in Count 6 and a "harassment" claim in Count 14
against parties who she refers to as "OLS" and "WFB" (PAC ¶¶ 77-
78, 107-09).  Leave to amend the complaint to add these two
claims is denied on futility grounds.

A proposed amended complaint is futile when it fails to
state a claim.  AEP Energy Servs. Gas Holding Co. v. Bank of Am.,
N.A., 626 F.3d 699, 726 (2d Cir. 2010); Health-Chem Corp. v.
Baker, 915 F.2d 805, 810 (2d Cir. 1990).  "Where a complaint
fails to contain any substantive allegations concerning a defen-

31

dant . . . it fails to state a claim as to that defendant."
Diggs v. City of New York, 17 Civ. 1127 (VEC)(HBP), 2018 WL
5924413 at *3 (S.D.N.Y. Aug. 17, 2018) (Pitman, M.J.) (Report &
Recommendation), adopted at, 2018 WL 4666073 (S.D.N.Y. Sept. 27,
2018) (Caproni, D.J.); accord Perkins v. City of New York, 14
Civ. 3779 (WHP), 2017 WL 1025987 at *2 (S.D.N.Y. Mar. 15, 2017)
(Pauley, D.J.); Myers v. City of New York, 11 Civ. 8525 (PAE),
2012 WL 3776707 at *3 (S.D.N.Y. Aug. 29, 2012) (Engelmayer,
D.J.), aff'd, 529 F. App'x 105 (2d Cir. 2013) (summary order).

        Not only does plaintiff's proposed amended complaint
not contain any factual allegations against OLS and WFB, she has
not moved to add them as parties to the action, does not list
them in the complaint's caption and never even explains who they
are.   Thus, leave to add Counts 6 and 14 are denied on futility
grounds.

                b.   Counts 2, 10, 12 and 13 -
                     Remaining New York State Claims

        In Count 2 of her proposed amended complaint, plaintiff
alleges that defendants violated New York General Business Law
Section 349 ("GBL") because defendants engaged in "unconscionable
commercial practices" and "performed in direct contradiction to
their promises of superior services and conduct" (PAC ¶¶ 61-63).
Plaintiff further alleges a "willful and w[a]nton gross negli-
gence" claim against all defendants under Count 10, an "unlawful

                                32

conversion" claim against all defendants under Count 12 and a "defamation" claim against Aurora and Nationstar under Count 13 (PAC ¶¶ 87-89, 94-106). While these state law claims do not appear to violate the Rooker-Feldman doctrine, because leave to amend is denied with respect to all plaintiff's federal claims, I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Alliance of Auto. Mfrs., Inc. v. Currey, 610 F. App'x 10, 14 (2d Cir. 2015); accord Milton v. Ocwen Mortg. Serv., Inc., 16-CV3837 (MKB)(JO), 2017 WL 2992489 at *3 (E.D.N.Y. July 14, 2017) (adopting and rejecting in part Report & Recommendation) (declining to exercise supplemental jurisdiction over plaintiff's GBL and state tort claims after plaintiff's federal claim was dismissed); McCann v. Rushmore Loan Mgmt. Servs., LLC, 15-CV-6502, 2017 WL 1048076 at *5 (E.D.N.Y. Mar. 16, 2017) (declining to exercise supplemental jurisdiction over plaintiff's GBL state claim after plaintiff's federal claim was dismissed pursuant to Rooker-Feldman).

Thus, because plaintiff's proposed amended complaint does not contain a viable federal claim and because plaintiff does not allege diversity of citizenship, I decline to exercise

supplemental jurisdiction over plaintiff's state law claims and leave to amend with respect to proposed Counts 2, 10, 12 and 13 is denied.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, plaintiff's motion for leave to amend her complaint is denied because (1) proposed Counts 1, 3, 4, 5, 7, 8, 9, 11, 15 and 16 are barred pursuant to the <u>Rooker-Feldman</u> doctrine, (2) proposed Counts 6 and 14 fail to state a claim upon which relief may be granted and (3) I decline to exercise supplemental jurisdiction over Counts 2, 10, 12 and 13.  The Clerk of the Court is respectfully requested to mark D.I. 54 closed.

Dated:  New York, New York
        July 8, 2019

                              SO ORDERED


                              HENRY PITMAN
                              United States Magistrate Judge

Copy mailed to:

Ms. Orinthia Gifford
C/O 4160 Digney Avenue
Bronx, New York 10466


Copies transmitted to:

All Counsel

34